UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JODY LYNN GARY** | : | **DOCKET NO. 16-cv-473** |
| **VERSUS** | : | |
| | | **UNASSIGNED DISTRICT JUDGE** |
| **WOMEN & CHILDREN'S HOSPITAL OF DELAWARE, LLC (a/k/a LAKE AREA MEDICAL CENTER)** | : | |
| | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment [doc. 27] filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendant Women & Children's Hospital of Delaware, LLC, a/k/a Lake Area Medical Center ("LAMC"). Plaintiff Jody Lynn Gary ("Gary") opposes the motion. Doc. 38. LAMC has filed a timely reply [doc. 43] and this matter is therefore ripe for review.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636. For the following reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 27] be **GRANTED** and that all claims against LAMC be **DISMISSED WITH PREJUDICE**.

### I.
#### BACKGROUND

This action arises from a slip and fall that occurred at LAMC, a hospital in Lake Charles, Louisiana, on September 29, 2014, at approximately 2:05 am. Doc. 8, att. 1, p. 5. Gary was a visitor in the hospital, awaiting the birth of a grandchild in a waiting area on the labor and delivery wing.

Doc. 27, att. 5, pp. 42–43. By the time of the accident, she had been in the waiting area for several hours. *See id.*

Angela Andrepont, nurse and house supervisor, came to the waiting area some time earlier to resolve a dispute with Gary's family. Doc. 45, pp. 2, 4. After speaking with Gary, she noticed water on the floor of the Labor & Delivery waiting area and called housekeeping.[1] *Id.* at 3. She also asked Gary and her family to move out of the area and was told that they had already been asked to move once by another hospital employee due to the nearby leak.[2] Doc. 38, att. 4, p. 3. Andrepont stated that she observed Gary and her family members walk through the water, tracking it across the floor. Doc. 45, p. 4. She admitted that she was "not sure if [she] saw the family making these footprints until either before or after the fall," but maintained that she saw the footprints on the floor and Gary and her family were the only ones in the area. Doc. 38, att. 4, p. 2. Josephine Teague, another hospital employee, stated that towels had been placed near the leaking water fountain and housekeeping had been called to address the situation. Doc. 38, att. 5, pp. 3, 4. However, she acknowledged that there were no towels in the specific area where Gary slipped, and that she was unaware of whether the area was marked with a wet floor sign. *Id.* at 6–7. There is no testimony from any person establishing that they saw water in the specific area where Gary slipped prior to the accident and Andrepont specifically stated that she did not see any water at that location prior to Gary's fall. Doc. 38, att. 4, p. 4.

Gary testified that she had observed water leaking from the water fountain all the way to the bathrooms, and that the only way to get to the bathroom was to cross over this water. Doc. 27,

---

[1] Gary also admits that she heard several people being warned about the leaking water fountain as they arrived on the floor. Doc. 27, att. 5, pp. 43–44.
[2] The deposition transcript excerpts provided by plaintiff do not specify whether plaintiff was in that group. *See* doc. 38, att. 4, p. 3. Defendant's uncontested statement of material facts provides that Andrepont addressed her request to "plaintiff and her family" and that is not refuted by the plaintiff. Doc. 27, att. 3, p. 1. It is therefore deemed admitted. Local Rule 56.2; *see, e.g.*, *William v. Beauregard Parish*, 2015 WL 7957031, *2 (W.D. La. Aug. 24, 2015).

att. 5, p. 50. After returning from the bathroom, she went back to the seating area to get some money and then set off for the vending machines. *Id.* at 50, 57–58. Gary then slipped and fell near where her husband was sitting. *Id.* at 57–59. She states that she did not see any water before she fell, but observed water on the floor after she fell and surmised that it was the reason for her fall. *Id.* A diagram that Gary helped complete during the deposition shows that she fell close to the bathroom, which were located along the same wall as the leaking water fountain.[3] *Id.* at 50–59, 109. Though no scale is provided for the diagram, and the water fountain itself is not visible within the frame of the video, the video evidence reflects that the waiting area was by no means large and that the site where Gary slipped, as marked on her diagram, could only have been a short distance from where she had earlier had to step over water in crossing from the seating area to the bathroom.[4] *See id.*; doc. 39 (manual attachment).

Gary contends that, as a result of the accident, she suffered injuries to various body parts. Doc. 3, p. 4. Accordingly, she filed suit against LAMC on August 5, 2015, in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, alleging that the accident was attributable to LAMC's negligence and that she was entitled to damages. *Id.* at 3–5. The matter was removed to this court on April 8, 2016, on the basis of diversity jurisdiction, 28 U.S.C. § 1332, after defense counsel received word that Gary would have surgery for one of her injuries. Doc. 1; *see* doc. 3, att. 1. LAMC has now filed for summary judgment, alleging that it cannot be held liable as (1) the allegedly unsafe condition was open and obvious and (2) LAMC did not owe Gary a duty of care with respect to that condition. Doc. 27, att. 2. Gary opposes the motion. Doc. 38.

---

[3] There are two water fountains in the diagram. Doc. 27, att. 5, p. 109. According to Gary, the one marked as "WF1," located farther away from the bathroom, was the one that was leaking. *Id.* at 54.
[4] Dorothy Thornton, another hospital employee, agreed that the area where Gary fell was "several feet" from the water fountain, in reliance on a viewing of the surveillance footage. Doc. 38, att. 3, pp. 7–8. Gary relies on this opinion in her statement of contested material facts. Doc. 38, att. 1, p. 1.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2553 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id*.

Once the movant makes this showing, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). The burden requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to draw all inferences based on underlying facts in the light most favorable to the non-moving party. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). On the other hand, "[i]f any factual issues exist, or if reasonable minds

might differ on the inferences arising from undisputed facts," the motion must be denied. *Bernard v. Bethlehem Steel Corp.*, 837 F.Supp. 215 (E.D. Tex. 1993).

### III.
#### APPLICATION

LAMC contends that the water in which Gary slipped was an open and obvious hazard, and that it therefore owed her no duty of care with respect to that condition.

Louisiana courts apply a duty-risk analysis in order to determine whether liability exists in a negligence case. *E.g.*, *Bufkin v. Felipe's Louisiana, LLC*, 171 So.3d 851, 855 (La. 2014). Under this analysis a plaintiff must show that: (1) the defendant had a duty to confirm his conduct to a specific standard of care; (2) the defendant failed to do so; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) the plaintiff incurred actual damages. *Id.* (citing *Christy v. McCalla*, 79 So.3d 293, 299 (La. 2011)). "The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty of care, and whether a duty is owed is a question of law." *Milbert v. Answering Bureau, Inc.*, 120 So.3d 678, 688 (La. 2013) (quotations omitted).

Generally, the owner or custodian of property has a duty to keep that property "in a reasonably safe condition." *Pryor v. Iberia Parish School Bd.*, 60 So.3d 594, 596–97 (La. 2011). Accordingly, he must discover unreasonably dangerous conditions on the property and correct them or warn others of their existence. *Id.* However, a condition is not unreasonably dangerous when it should be obvious to all and a defendant, therefore, owes no duty to plaintiff to protect him against open and obvious hazards. *Id.* "[T]o be open and obvious, the risk of harm should be apparent to all who encounter the dangerous condition." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So.3d 175, 184 (La. 2013). When the court can determine that no unreasonably

dangerous condition existed, summary judgment is appropriate. *Allen v, Lockwood*, 156 So.3d 650, 652–53 (La. 2015).

In a slip and fall case, "a hazard is shown to exist when the fall results from a foreign substance on the floor or from an otherwise unreasonably slippery condition." *Smith v. Winn Dixie Montgomery, LLC*, 2014 WL 2740405, *3 (M.D. La. Jun. 17, 2014) (quoting *Stockwell v. Great Atl. & Pac. Tea Co.*, 583 So.2d 1186, 1188 (La. Ct. App. 1st Cir. 1991)). "However, 'if the risk of harm is obvious, universally known and easily avoidable, the risk is not unreasonable' and the defendant has no duty to warn or protect against it." *Id.* (quoting *Kilcrease v. Barnhills Buffet, Inc.*, 2007 WL 30623, *2 (W.D. La. Jan. 3, 2007)). The relevant inquiry is whether the hazard "is 'open and obvious' to *all*, not just the plaintiff." *Ray v. Stage Stores, Inc.*, 640 Fed. App'x 322, 325–26 (5th Cir. 2016) (emphasis in original) (citing *Broussard*, 113 So.3d at 188). Accordingly, "[t]he plaintiff's knowledge may lead to the inference that others were aware of the hazard, but the question is one of 'global knowledge.'" *Id.* at 326 (citing *Butler v. Int'l Paper Co.*, 636 Fed. App'x 216, 219 (5th Cir. 2016) and *Broussard*, 113 So.3d at 188)) (footnotes omitted).

In the context of slip and fall claims against hospitals, as plaintiff points out, the majority of the Louisiana Courts of Appeal hold that hospitals must overcome a presumption of negligence once it has been established that the plaintiff slipped on a foreign substance.[5] *E.g.*, *Neyrey v. Touro*

---

[5] The general slip and fall statute under Louisiana law, Louisiana Revised Statute § 9:2800.6, applies to merchants and not hospitals – a point on which Louisiana courts agree. *See Connelly v. Veterans Admin. Hosp.*, 23 F.Supp.3d 648, 655 (E.D. La. 2014) (collecting cases). Under 1990 amendment to the merchant liability statute, "floor debris no longer creates a presumption of negligence and the burden no longer shifts to the merchant to exculpate itself from that presumption." *Touro Infirmary*, 639 So.2d at 1216 The Louisiana Fourth Circuit Court of Appeal holds that a hospital's duty is greater than that owed by a merchant, and that in slip and fall cases involving hospitals, the hospital is still required "to exculpate itself from a presumption of negligence" after the plaintiff shows that he slipped on a foreign substance within the hospital. *Id.* at 1216–17. The First, Third, and Fifth Circuits have adopted this approach. *See Connelly*, 23 F.Supp.3d at 655–56. However, the Louisiana Second Circuit Court of Appeal holds that no such presumption applies to non-merchant defendants, such as the hospital defendant in that matter, and that a hospital's duty to its patrons is less than that owed by a merchant. *Holden v. LSUMC in Shreveport*, 690 So.2d 958 (La. Ct. App. 2d Cir. 1997).

*Infirmary*, 639 So.2d 1214, 1216–17 (La. Ct. App. 4th Cir. 1994). Still, the presumption is premised on the hospital's duty to "act[] reasonably in order to discover and correct the **dangerous condition** reasonably anticipated in its business activity." *Id.* at 1216 (emphasis added); *see also Terrance v. Baton Rouge Gen. Med. Ctr.*, 39 So.3d 842, 844 (La. Ct. App. 1st Cir. 2010) (same). The absence of an unreasonably dangerous condition still implies the absence of a duty on the part of the defendant hospital. *Williams v. Leonard Chabert Med. Ctr.*, 744 So.2d 206, 209 (La. Ct. App. 1st Cir. 1999). Accordingly, there is no cause for reaching that presumption (or determining that the majority approach is the one this court should follow) if it is first shown that the hospital had no duty with regard to the condition because it was open and obvious.[6] However, even if a presumption did apply, LAMC would meet its burden, infra, by showing that it had no duty with regard to the condition that caused plaintiff's fall because its response to the leaking water had already rendered the condition open and obvious.

      Gary contends that LAMC has not carried its burden, for the purposes of this motion, of showing the water on which she slipped qualifies as an open and obvious hazard. To this end she points to the fact that no towels or signs were placed by the specific water in which she slipped. She also emphasizes that no testimony has actually established that she was tracking through the water, rather than taking a necessary path over it, prior to the accident, and that no one has testified to being aware of the water that caused her fall prior to the accident. From the parties' conflicting evidence, there is an issue of fact as to whether Gary had tracked water across the floor herself and/or seen others doing so. However, LAMC's evidence shows that 1) Gary and others on the floor were aware that there was a leak coming from the water fountain, 2) towels showed that there

---

[6] *See Smith v. Southwest La. Hosp. Ass'n*, 178 So.3d 308, 311 n. 3 (La. Ct. App. 3d Cir. 2015) (noting, on review of assignment of error alleging that hospital was not liable because slippery conditions in the lobby of the facility on a rainy day were open and obvious, the Louisiana Supreme Court's holding in *Pryor*, supra, that a property owner has no duty to protect against open and obvious hazards).

was water on the floor in that waiting area, 3) Gary herself was aware of water on other areas of the floor, which she had to step over, and 4) hospital employees requested that people in the waiting area near the leak, including Gary, move to a different area. Furthermore, Gary's diagram and the video evidence reflect that the waiting area they were asked to leave was not very large and that the place where she slipped could only have been a short distance from the leaking water fountain.

The requests to move received by Gary and her family members support an inference, even in the light most favorable to plaintiff, that others in that waiting area would be aware of the risk, especially in conjunction with the other indications of water in that area. Accordingly, regardless of whether Gary or other members of her party actually tracked the water into the area where she fell, it was readily and objectively apparent in this case that water might be tracked to other parts of the waiting area, especially along common pathways such as to and from bathrooms, thus rendering the floor slippery.

There is no question of material fact as to the conditions at issue here. The wet floors in one part of the waiting area, and the risk that water could be moved to other areas of the floor as people remained in the area, were an open and obvious hazard. LAMC has thus shown that it owed Gary no duty relating to that condition, and it is therefore entitled to judgment as a matter of law.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 27] be **GRANTED** and that all claims against LAMC be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed

factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 16th day of October, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE